UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> MATTHEW BUCKLER, <br><br> Defendant. | Crim. Action No. 1:22-CR-162 (TNM) |

### MEMORANDUM IN AID OF SENTENCING

Matthew Buckler is a nineteen-year-old college freshman whose hard work earned him a full academic scholarship. He is a bright young man with a promising future. Despite his young age, Matthew made the mature and adult decision to accept full responsibility for his conduct on January 6, 2021. To that end, he stands before the Court for sentencing pursuant to his plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Not only has Matthew accepted responsibility by pleading to a criminal offense, as the attached letters attest, he has expressed his remorse and shame to his parents, mentors, and friends.

Matthew was only eighteen years old when he attended the "Stop the Steal" Rally with his parents and family friends. After hearing the speeches, he and his friend were swept up in the crowd and entered the Capitol building. Once inside, they chanted with the crowd and took selfies. After only about ten minutes, they realized they made a grave mistake and promptly exited the Capitol. These ten minutes— during which Matthew unquestionably acted foolishly and irresponsibly—have

indelibly imprinted on this young man's life. He went from being a typical high school student to being interviewed by FBI agents, having his phone seized by agents, charged with federal offenses, and placed on federal pre-trial release. Instead of feeling aggrieved, as many high school students might feel in his situation, Matthew has reflected on his actions from that day and learned from these experiences. He has maintained perfect compliance with his pre-trial release conditions since September 2021. Application of the factors set forth in 18 U.S.C. § 3553 (a) demonstrate that a sentence of no more than a brief period of probation is sufficient but no greater than necessary to achieve the goals of sentencing.

### I.  Matthew Buckler's history and characteristics support a sentence of a brief probationary period.

Matthew Buckler was born in La Plata, Maryland and raised by his mother, Sue Buckler, as an only child. Matthew's father passed away from liver disease when Matthew was in middle school. Sue Buckler owns a small insurance agency in Waldorf, Maryland.

Growing up, Matthew consistently excelled in his studies and in soccer. He attended Catholic schools for his entire education and was accepted at St. Mary's Ryken High School where he was an honor roll student and captain of the soccer team. As a star soccer player, not only did he play varsity soccer with his school team, he was also a valuable member of the Maryland State Soccer Team for which he had the opportunity to play in Italy. When he was a senior in high school, he was courted by many universities and ultimately accepted at Shenandoah University, which

offered him a four-year, full scholarship. He currently plays for the university's soccer team.

Friends and family describe Matthew as hard-working and generous. One friend and fellow-church member observed:

> As a fellow church member I have seen Matthew volunteer at the local church food pantry on several occasions. He has a giving, loving spirit to those in need along with a compassion to help others.[1]

Matthew's soccer coach similarly described him in his letter to the Court:

> He is well known and admired by his peers, teachers, and coaches as a person with a fine character, a responsible and dedicated son, and a reliable member of the community.[2]

The attached letters were written by people who have carefully watched Matthew grow throughout his life. They demonstrate that his conduct on January 6 was a youthful aberration from which he has learned and matured. To that end, Matthew has expressed his regret privately to his loved ones. For example, Ms. Buckler acknowledged that Matthew "knows he made an awful mistake when he went into the Capitol."[3]

## II. The nature and circumstances of the offense militate in favor of a brief probationary sentence.

Matthew was senior in high school when he attended the Trump rally with his mother and their friends. Matthew was never heavily involved in politics; though raised in a conservative home, he generally supported President Trump and other

---

[1] Letter of Marlene Krestner, attached hereto as part of Exhibit 1.
[2] Letter of Guy Milano, attached hereto as part of Exhibit 1.
[3] Letter of Sue Buckler, attached hereto as part of Exhibit 1.

Republican candidates. During high school, he was focused on soccer and school and was unable to closely follow politics. Matthew's mother, Sue, on the other hand, was a self-described "big Trump supporter" who came up with the idea to attend the rally to support the president she loved. Matthew, unaware of what this decision would ultimately mean, and other friends went along. The group attended the rally and listened to all the speeches. When the crowd started moving to the Capitol, they followed along. At some point, Matthew and his friend (who was then seventeen years old) got separated from the parents and proceeded closer to the Capitol. Caught up in the excitement and frenzy of the crowd, they entered the building twice, the first time, briefly, and the second time, through a broken window. However, they did not damage any property to gain entry inside. They did not assault anyone, vandalize property, or even jostle anyone. Once inside, Matthew and his friend walked around and joined in some chanting. While they did follow the crowd into a Senator's office, they remained there briefly and did not "vape" or vandalize the office. As is typical of teenagers (not to mention many adults), they took "selfie" videos and posted them to social media. After wandering around for a few minutes, they started to realize that what they were doing was a terrible idea. They exited after about ten minutes inside.

      As this Court is well aware, there are significant disparities in the type of conduct January 6 defendants engaged in. Many are alleged to have assaulted police officers or vandalized property. Many are alleged to have intended to disrupt the certification of the vote. Matthew is indisputably not in one of those categories. Simply put, he was a high school kid who got caught up in the heat of the moment

4

and foolishly made a decision he will regret for the rest of his life. He has already experienced serious consequences for his actions.

### III. A brief probationary period in addition to the consequences Matthew has experienced will serve as a just punishment and more than adequate deterrent.

After attending the rally, Matthew returned home and resumed his life as usual. One day, FBI agents knocked on the door and asked to speak to him. Still a teenager, Matthew was understandably terrified. He confessed he entered the building and he later turned over his phone to the agents. He was arrested on September 17, 2021, and placed on conditions of pre-trial release. He has maintained perfect compliance for the ten months he has been supervised by pre-trial services.

Matthew immediately accepted responsibility and was prepared to also plead guilty immediately. The only delay in resolving this case was caused by his first public defender's departure from the office and the need for undersigned counsel to get up to speed. Matthew accepted responsibility with full awareness of the consequences that reach beyond whatever sentence this Court imposes. It bears noting that though his offense is a misdemeanor, any criminal conviction could adversely impact his future. It may, for example, render him ineligible for certain employment positions. In addition, Matthew's case received some publicity, especially in his community. News of his arrest quickly traveled around his school and soccer team. Understandably, the public nature of this case has been a source of embarrassment to him. These are some of the collateral consequences that, standing alone, would constitute a "just punishment" for Matthew's relatively low-level offense. As for

deterrence, to say that these consequences serve as an adequate deterrent is an understatement in Matthew's case. The very fact that he was arrested and is facing jail time is more than enough to prevent Matthew from ever offending again. And certainly, his arrest and prosecution alone would serve as deterrent to other similarly situated young people who might be prone to getting caught up in the heat of a large and riled up crowd.

### IV. A brief probationary sentence will avoid unwarranted sentencing disparities.

A probationary sentence will avoid unwarranted sentencing disparities and would be consistent with sentences this Court has imposed for similar—and even more culpable—conduct. The government points to two cases in which district judges imposed jail time for defendants who entered congressional offices. However, the government acknowledges—as it must—that those cases are not comparable to Matthew's. For example, defendant Bonet smoked marijuana in Senator Markley's office. *See* ECF No. Gov. Memo at 20. Moreover, the government fails to mention that defendant Bonet yelled hateful comments while inside the Capitol, calling officers "pieces of shit," and tried to publicly justify his behavior in a television interview shortly afterwards, making "excuses" and "minimiz[ing]" his actions.. *See* 1:21CR121 (EGS), ECF No. 49, Gov. Sentencing Memo at 1-2. In that case, the government emphasized that Bonet's "television statements emphasize the need for a sentence of incarceration." *Id*. at 3. Of course, Mr. Buckler made no similar public statements to undercut his acceptance of responsibility. Next, the government points to *United States v. Entrekin*, 1:21CR686 (FYP). Defendant Entrekin was 49 years old when he

entered the capitol building, live-streamed his actions to his mother, stating (among other things) "we can't let Biden be president," and had a criminal history involving yelling and the threatening of others. *See* 1:21CR686, ECF. No. 20, Gov. Sentencing Memo at 40. By way of comparison, Matthew was still a teenager when he entered the building, he did not express a desire to overturn the election results, and he has no prior criminal record.

Instead, this case is more like *United States v. Torre*, 1:21CR143 (RC), in which the 24-year old defendant similarly entered through a broken window in the Senate Wing and entered the Senate Spouse's Lounge and Senator Markley's "hideaway" office. While inside, defendant Torre live-streamed by video, describing how "wild" the events were and posed for a photo with USCP officers who had been overrun by protestors. *See* 1:21CR143 (RC), ECF. No. 38, Gov. Sentencing Memo at 2. For all of this conduct, defendant Torre was sentenced to 12 months' probation and 2 months of home confinement. The government's memo likewise does not mention the cases in which defendants went into sensitive areas of the Capitol and received probationary sentences based on the totality of 3553(a) factors. *See United States v. Amy Schubert*, 21-cr-588 (ABJ) (defendant sentenced to 18 months' probation where defendant entered congressional meeting room and took a "selfie"); *United States v. Anthony Mariotto*, 21-cr-094 (RBW) (defendant entered Senate Gallery and photographed himself inside, sentenced to 36 months' probation); *United States v. Joseph Zlab*, 21-cr-389 (RBW) (defendant who entered House Appropriations Room and was close to the House Chamber sentenced to 36 months' probation).

7

Undersigned counsel submits that Matthew's conduct is more consistent with those cases in which defendants have received probation and that his youth at the time of his offense is a factor that sets him apart from the vast majority of January 6 cases and is a mitigating factor that this Court should consider in fashioning an appropriate sentence. Indeed, his companion that day, who is less than one year younger than Matthew, was not even charged for the very same conduct due to his age.

### V. A Period of Incarceration Followed by a Period of Probation is Impermissible

The defense respectfully maintains that a "split sentence" is not authorized because Mr. Buckler is convicted of a petty offense. While the government insists that this court may impose a split sentence, the issue is pending appeal before the D.C. Circuit. *See United States v. Little*, 22-3018 (originating docket No. 21-cr-315 (RCL)).[4] The defense maintains that the correct reading of the relevant statutes and the legislative history, as discussed in the defense pleadings in *United States v. Madden*, makes it clear that a district court has a dichotomous choice: it can either sentence Mr. Buckler up to six months imprisonment, or it can sentence him up to five years probation. Indeed, most judges in this district confronted with the government's request for a split sentence for one single petty offense conviction have declined to

---

[4] In *United States v. Madden*, 21-cr-55 (EGS), the Honorable Emmet G. Sullivan requested that the defense provide briefing explaining why it believes the district court in *Little* erred in imposing a split sentence. The defense submitted a supplemental brief addressing the court's question. Mr. Buckler adopts all of the arguments contained in that brief. For all of the reasons stated in *Madden*, the court is not permitted to impose a split sentence as doing would raise significant constitutional concerns.

8

impose such a sentence. *See United States v. Spencer*, 21-CR-147 (CKK) (amending sentence after briefing provided), ECF No. 70; *United States v. Torrens*, No. 21-cr-204 (BAH), ECF No. 110 & 125); *United States v. Kari Kelley*, 21-CR-201 (DLF) (At sentencing on March 17, 2022, Judge Friedrich rejected the government's contention that a split sentence could be imposed even after being provided notice of the *Little* decision); *United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (Judge Hogan also rejecting government's proposal for split sentence); *United States v. Vic Williams*, 21-CR-388 (RC) (court did not impose split sentence despite government's recommendation of split sentence); *United States v. Zachary Wilson*, 21-CR-578 (APM) (same); *United States v. Traci Sunstrum*, 21-CR-652 (CRC) (same); *United States v. Michael Carico*, 21-CR-696 (TJK) (same); *United States v. Tanner Sells*, 21-CR-549 (ABJ) (same).

Lastly, the government asserts that, at a minimum, the Court can impose intermittent confinement as a condition of probation. However, this would still be considered a Bureau of Prisons sentence and is therefore not permissible for the same reasons discussed in *Madden*. The Court does not have statutory authority to impose any sentence combining imprisonment and probation for a petty offense regardless of what the incarceration is technically called. Moreover, when it relates to a petty offense, it is unclear at what point an "interval of time" effectively becomes a "term of imprisonment" and therefore would constitute an unauthorized sentence of both imprisonment and probation. Cf. 18 U.S.C. §3583(d) (term of intermittent confinement pursuant to §3563(b)(10) may be imposed only for a *violation* of condition

of supervised release). A sentence of "intermittent confinement" as a condition of probation for a petty offense raises significant issues and potential constitutional issues. *See United States v. Voda*, 994 F.2d 149, 151 n.2 (5th Cir. 1993) ("Voda expressly waived any argument that imposition of sixty days' confinement served over sixty day period is "imprisonment," as opposed to intermittent confinement, and thus a violation of section 3562"); *United States v. Baca*, 2011 WL 1045104 (C.D. Cal. March 18, 2011) *supra* at *2 (45 day condition of confinement violates statute).

## Conclusion

Mr. Buckler has already been punished by the collateral damages resulting from his actions, and through his post-arrest conduct and his whole-hearted acceptance of responsibility, he has demonstrated that his conduct on January 6 was a youthful aberration from which he has learned important lessons. In short, even setting aside the issue as to whether a sentence of incarceration is legally permissible, the sentencing factors support nothing more than brief probationary sentence in this case.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DFENDER

\_\_\_\_\_/s/_____
Elizabeth Mullin
Assistant Federal Public Defender
Office of the Federal Public Defender
 for the District of Columbia
625 Indiana Avenue, N.W.
Washington, D.C. 20004